IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Anthony Schultz, individually and in his capacity as the Personal Representative of the Estate of Sandra M. Schultz Peters,<br><br>Plaintiff,<br><br>vs.<br><br>Horry County Government, Horry County Police Department, Julian Kent Brown, individually, Gregory Hutchins, individually, and William Muldoon, individually,<br><br>Defendants. | **COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

**INTRODUCTION**

1. This is a civil rights action seeking money damages to redress the egregious and conscience-shocking violation of the constitutional rights of Sandra M. Schultz Peters, who was killed when Officer Duke Brown, a patrol officer employed by the Horry County Police Department, ran over and crushed her with a department-issued Ford Ranger while she was seated in a beach chair on a public beach in Horry County, South Carolina.

2. Plaintiff brings this action against those responsible: Officer Duke Brown, who drove the vehicle with deliberate indifference to an obvious risk of grave harm; his supervisors, Gregory Hutchins and William Muldoon, who knew of, tolerated, and condoned similar prior incidents; and the municipal entities, Horry County and the Horry County Police Department, who implemented and perpetuated policies, customs, and practices that allowed dangerous and unconstitutional conduct to continue unchecked.

3. The Defendants' acts and omissions, individually and collectively, deprived Ms. Schultz Peters of her clearly established rights under the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Horry County, South Carolina.

## PARTIES

6. Plaintiff Anthony Schultz is the brother of the late Sandra M. Schultz Peters and the duly appointed Personal Representative of the Estate of Sandra Schultz Peters.

7. Defendant Horry County is a political subdivision of the State of South Carolina responsible for funding and supervising the Horry County Police Department.

8. Defendant Horry County Police Department ("HCPD") is a municipal law enforcement agency of Horry County and was acting under color of state law at all relevant times.

9. Defendant Officer Duke Brown is an individual who at all relevant times was a sworn law enforcement officer employed by HCPD. He is sued in his individual capacity.

10. Defendant Captain Gregory Hutchins was, at all relevant times, the administrative head of the HCPD Beach Patrol Division. He is sued in his individual capacity.

11. Defendant Sergeant William Muldoon was, at all relevant times, Officer Duke Brown's supervisory officer within HCPD. He is sued in his individual capacity.

**FACTUAL ALLEGATIONS**

12. According to Officer Brown, it has been illegal for the public to drive motor vehicles on Horry County public beaches since at least the mid-1990s; indeed, the Horry County Code of Ordinances provides that "[i]t shall be unlawful for any person to drive or operate any motorized vehicle of any kind or nature upon the public beach or within public marsh areas within the county limits. All municipal, county, and state police vehicles; municipal, county, or state vehicles operated while cleaning or working on the beach; emergency vehicles; and approved beach franchise vehicles are exempted from the application of this section." Horry County, S.C., Code of Ordinances § 5-19 (2025).

13. HCPD's designee has testified that HCPD does not understand why Horry County Government passed that law or the intent behind it.

14. But the dangers of operating a patrol vehicle in such an environment are obvious. To that end, the designee of the HCPD has testified that operating a large motor vehicle in areas where people are sitting, like a beach, is "inherently dangerous."

15. This danger is readily apparent from examining a pattern of incidents involving HCPD vehicles on public beaches.

16. On May 24, 2020, HCPD Beach Patrol Officer Scott Sullivan ran over a civilian who was seated on the beach, causing significant injuries. The incident was the subject of considerable local media attention.

17. HCPD's designee has testified that this incident facilitated a renewed commitment to beach safety, to include the creation of beach driving "best practices" training.

18. On or around September 30, 2023, Officer Brown, while patrolling the beach in his capacity as HCPD Beach Patrol Beach Safety Director, ran over another beachgoer's chair,

as confirmed by the chair owner, Shana Salley, Officer William Conklin, and Officer Brown's direct supervisor, Sgt. William Muldoon.

19. Officer Brown has testified that he did not see Ms. Salley's chair before running it over. Despite this clear warning of impaired visibility or unsafe operation, he continued his patrol without altering his behavior.

20. In doing so, Officer Brown ran over the chair while violating the same "best practices" that he taught other officers, those being: 1) staying in the designated driving lane when possible; 2) parking parallel to the water line; and 3) conducting a 360-degree walkaround of a parked truck before moving it.

21. Officer Brown knew and taught these "best practices" and was deliberately indifferent to them.

22. When Officer Brown ran over Ms. Salley's chair, he missed killing or injuring her by a matter of seconds.

23. Officer William Conklin responded to the scene after Officer Brown ran over Ms. Salley's chair and told her, "Maybe this would help keep him in the office…," indicating HCPD's knowledge of Officer Brown's unfitness to operate a motor vehicle on the beach. When provided the opportunity to explain his statement under oath, Officer Conklin denied having made it.

24. Further, Officer Conklin told Ms. Salley that a supervisor would contact her to discuss the incident; no call ever came.

25. In a conscience-shocking act of deliberate indifference, Officer Brown's direct supervisor, Sgt. Muldoon, chose not to report this incident up the chain of command, formally

investigate, or institute the requisite disciplinary review of Officer Brown's conduct because "it wasn't any big deal is what I was told."

26. Officer Brown's supervisor, Sgt. Muldoon, knew Officer Brown had violated HCPD's "best practices" when he ran over Ms. Salley's chair and did nothing because "it wasn't any big deal…"

27. On the day Officer Brown ran over Ms. Salley's chair and missed killing or maiming her by a matter of seconds, HCPD knew: 1) the "best practices" for beach driving; 2) knew Officer Brown and others were not following the "best practices;" and 3) did not make the "best practices" mandatory procedures.

28. Despite multiple prior instances where HCPD officers ran over beachgoers or their belongings, when questioned about why "best practices" never became mandatory policy, HCPD's designee testified, "I don't know," thereby manifesting conscience-shocking deliberate indifference to beachgoers.

29. On June 13, 2024, Ms. Schultz Peters was enjoying a day at the beach near the Springmaid Pier in the City of Myrtle Beach, South Carolina,

30. At the same time and place, HCPD Beach Patrol Beach Safety Director Duke Brown pulled onto the beach from the Nash Street Beach Access Point to monitor surf conditions.

31. The weather conditions and topography were such that surf conditions were readily visible to the naked eye from the nearby parking lot.

32. Rather than parking his vehicle and walking onto the beach, or simply observing the surf conditions from the nearby parking lot, Officer Brown chose to drive his vehicle onto the beach.

33. Officer Brown was not responding to an emergency, chasing a suspect, or pursuing official business; but rather was intentionally driving on a public beach with a conscience-shocking and documented inability to observe his surroundings and operating a HCPD vehicle with significant blind spots.

34. After entering the beach in his vehicle, Officer Brown drove through the designated lane of travel for vehicle traffic and entered the area the public occupied, where many beachgoers were sitting and enjoying the beach.

35. Further, Officer Brown, despite operating a motor vehicle on a crowded public beach, was not operating his emergency lights or siren.

36. When Officer Brown chose to exit the beach in his motor vehicle, already outside the designated lane of travel for vehicle traffic, he chose to do so by executing a U-Turn maneuver through the area occupied by members of the public enjoying an afternoon at the beach.

37. Officer Brown chose to leave the designated lanes and proceed towards the public gathered on the beach rather than stay within the designated lanes by driving parallel to the ocean until he reached the next point of vehicular ingress and egress.

38. While Officer Brown was executing a conscience-shocking, blind U-Turn on a public beach with a heavy public presence, he ran over Ms. Schultz Peters with his motor vehicle, pinning her under the passenger side tire of Officer Brown's motor vehicle.

39. Ms. Schultz Peters remained trapped under Officer Brown's vehicle until beachgoers lifted the vehicle off her ninety-five-pound body.

40. Despite the weight of Officer Brown's vehicle bearing down on Ms. Schultz Peters, she remained conscious while beachgoers and then emergency personnel attended to her, but tragically, she succumbed to her injuries in the hospital later that day.

41. As a direct and proximate result, Ms. Schultz Peters sustained fatal crush injuries after languishing in conscious pain and suffering.

42. Ms. Schultz Peters' death was entirely preventable.

43. Officer Brown, yet again, violated HCPD's "best practices" when he killed Ms. Schultz Peters in a nearly identical manner to when he almost killed Ms. Salley just a few months before.

44. Identically to the incident in which he ran over Ms. Salley's chair and nearly killed her, and identically to the incident in which Officer Sullivan ran over and severely injured a beachgoer, nearly killing her, Officer Brown has testified that he did not see Ms. Schultz Peters sitting in her chair before he ran her over and killed her.

45. HCPD failed to properly discipline, retrain, or supervise its officers after these incidents.

46. HCPD did not implement mandatory or adequate written protocols or safety policies for operating patrol vehicles in high-pedestrian zones such as public beaches.

47. Supervisors such as Captain Hutchins and Sergeant Muldoon were aware of the prior incidents and of the dangers posed by vehicle operations on populated beaches.

48. Despite this knowledge, no mandatory remedial training, disciplinary action, or policy changes were implemented.

49. The municipal failure to supervise and train, as well as the tolerance of constitutional violations, amounted to deliberate indifference and created a foreseeable risk of serious injury or death.

50. The acts and omissions of each Defendant were the moving force behind the constitutional deprivation suffered by Ms. Schultz Peters.

51. In the wake of the incident in which Officer Brown killed Ms. Schultz Peters, HCPD Officers engaged in a group text where they stated they would "weather the storm" and "have [Officer Brown's] back 100%." They further indicated that "we got you[.]"

52. Shockingly, the officers were highly critical of members of the public expressing outrage over the killing, calling them "***holes" and saying "f*** those people, KARMA is a b**** and it will come around to them[.]"

### FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 - 14th Amendment Claim of Violation of Due Process
### Against Julian Kent "Duke" Brown

53. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated verbatim herein.

54. The acts and omissions of Officer Brown by driving his vehicle on a public beach without being able to properly see his surroundings in an area with a heavy public presence constitute a conscience-shocking deliberate indifference to the lives and safety of those around him in violation of Plaintiff's Fourteenth Amendment Rights.

55. In the minutes before running over and killing Plaintiff, Officer Brown had no legitimate need to drive his vehicle on the beach; while he intended to monitor surf conditions, he could have performed that task in a multitude of ways: he could have remained in his vehicle in the parking lot, parked his vehicle in the parking lot and walked on foot to the beach, or simply viewed the surf conditions remotely by way of the real-time surf camera that is available to the general public atop the nearby Double Tree Resort by Hilton.

56. Instead, Officer Brown chose to enter the beach, exceed the designated vehicle lane, drive into an area occupied by the public, and attempt a blind U-Turn, all in violation of the same policies and procedures that he taught officers to follow as the HCPD Beach Patrol Beach Safety Director.

57. By the acts and omissions described above, Officer Brown violated 42 U.S.C. §1983, depriving Plaintiff of the following clearly-established and well-settled constitutional rights protected by the Fourteenth Amendment to the U.S. Constitution:

    a. The right to be free of unlawful, reckless, deliberately indifferent, and conscience-shocking conduct as secured by the Fourteenth Amendment;

    b. The right to be free from deprivation of life, liberty, and property without substantive due process and from state-created/enhanced danger as secured by the Fourteenth Amendment;

    c. The right to be free from the danger that Officer Brown, a uniform-clad member of The Horry County Police Department, wielding the authority Horry County Government endowed upon him, created under the circumstances then and there prevailing by his conscious and deliberate choices to:

        1. Drive a motor vehicle in a public area where Plaintiff and other beachgoers had every right to sit in, lie on, play in, or otherwise enjoy.

        2. Drive a motor vehicle onto the beach to monitor surf conditions equally visible and ascertainable by other means that posed a 0% risk of death to beachgoers;

        3. Drive his motor vehicle beyond the designated lane for beach traffic as he instructed other officers to do;

    4. Attempt to exit the beach in his motor vehicle by executing a U-Turn rather than making a left turn as he instructed other officers to do;

    5. Failing to park his vehicle perpendicularly to the ocean as he instructed other officers to do;

    6. Failing to conduct a 360-degree walkaround of his parked vehicle before putting it in motion to ascertain whether beachgoers were in his intended path of travel, as he instructed other officers to do; and

    7. Failing to clear his vehicle's blind spots, of which he was on actual notice by and through the training and instruction he provided, as he instructed other officers to do.

  d. And in such other particulars as ongoing discovery may reveal.

58. As a direct and proximate result of the conscience-shocking conduct of Officer Brown, Plaintiff suffered physical harms and losses, including death, as is more fully outlined in this Complaint.

### FOR A SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 (Monell Claim)
### Against Horry County and HCPD

59. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated verbatim herein.

60. At all relevant times, Defendants Horry County and HCPD were municipal entities organized under the laws of the State of [State], with authority over and responsibility for the policies, practices, and training of their police department, including vehicular patrol operations on public beaches.

61. The fatal injury to Plaintiff's decedent was the direct and foreseeable result of a pattern of similar incidents involving officers operating department vehicles on public beaches in a manner that created a substantial and obvious risk to beachgoers.

62. Before the incident giving rise to this Complaint, at least two other beachgoers were run over by employees of the Defendant's police department while those employees operated vehicles on pedestrian-populated beaches. Another beachgoer narrowly avoided being run over because the presence of Officer Brown's running vehicle directly behind her chair made her extremely uncomfortable; as above, Officer Brown subsequently ran over her chair, with such events being reported to his direct supervisor.

63. These prior incidents placed Defendants Horry County and HCPD on actual notice that their training, supervision, and vehicular patrol policies were wholly inadequate to protect the constitutional rights of civilians lawfully present on the beach.

64. In response to these prior incidents, Defendants Horry County and HCPD purportedly developed updated training materials and vehicular operation "best practices" intended to prevent future harm to beachgoers. Those "best practices" included the following:

    a. "Keep windows open if weather permits;"

    b. "Be aware of blind spots;"

    c. "No texting;"

    d. "Left hand turns are recommended on the beach;"

    e. "Always complete a 360 degree check around the vehicle before backing;"

    f. "Park parallel to the waterline;"

    g. "Be a responsible driver;"

    h. "Park in or near the driving lane;"

     i. "Prior to moving a parked vehicle, complete a 360 degree walk around of the vehicle;"

     j. "Operate in a safe way;"

     k. "Use lights and sirens;" and

     l. "Use the PA system to clear beach patrons if necessary."

65. However, Defendants Horry County and HCPD failed to implement those trainings or policies as mandatory and failed to ensure their dissemination and enforcement across the department.

66. Further, when Officer Brown struck a beach chair with his vehicle—an object that had been occupied by a beachgoer moments earlier—he reported the incident to his supervisor, Sgt. Muldoon, as required.

67. Sgt. Muldoon intentionally declined to initiate a mandatory investigation, stating, "It wasn't a big deal is what I was told," thereby signaling a de facto policy or custom of disregarding serious vehicular safety violations committed by officers in beach patrol contexts.

68. Defendants Horry County and HCPD had actual knowledge of this pattern of misconduct and failed to act, and were deliberately indifferent to it.

69. Defendant's failure to:

     a. mandate or enforce training on vehicle operation near civilians;

     b. discipline or retrain officers after known violations; and

     c. investigate known policy breaches

constituted a custom or practice of deliberate indifference to the rights of individuals subject to its officers' conduct.

70. Considering the testimony of HCPD's designee that Officer Brown would have followed any mandatory beach vehicle operation policies, this municipal inaction was the moving force behind the constitutional deprivation suffered by Plaintiff's decedent and is independently actionable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

71. Defendants Horry County and HCPD thereby violated the Fourteenth Amendment rights of Ms. Schultz Peters by failing to train and supervise their officers in a context where the risk of harm was obvious, well-documented, and repeatedly realized. To that end, HCPD's designee has testified that operating a motor vehicle on a beach where civilians were lying down was "inherently dangerous."

72. The acts and omissions of HCPD personnel, including Officer Duke Brown, which resulted in the wrongful death of Sandra Schultz Peters, were the direct result of Horry County and HCPD's customs, practices, or policies that reflect deliberate indifference to the constitutional rights of individuals, specifically allowing the "inherently dangerous" custom, practice, and policy of driving full sized motor vehicles on beaches featuring the heavy presence of civilian beachgoers after known and documented instances of such vehicles striking and causing damage to the persons and property of such beachgoers.

73. Before the fatal incident involving Ms. Schultz Peters, HCPD knew of at least three previous incidents in which HCPD personnel ran over or struck civilians or their property with department-issued vehicles while patrolling crowded public beaches, namely:
    a. An incident in the early 2000s in which an officer struck a civilian beachgoer with a vehicle;

  b. In or around May 2020, an HCPD officer named Sullivan ran over a civilian while driving on the beach in Garden City, resulting in serious injury.

  c. In or around June 2024, Officer Duke Brown ran over a civilian beachgoer's chair with his marked patrol truck on a populated beach, an incident captured in photographic evidence and confirmed in sworn testimony.

74. Despite this knowledge, HCPD failed to implement, modify, or enforce any written policies or training protocols specific to safe vehicle operation on pedestrian-dense beaches. Nor were officers disciplined, retrained, or supervised to mitigate this known risk.

75. Officer William Conklin testified that no formal training existed for operating patrol vehicles on the beach and that Officer Brown had previously admitted not to seeing a chair he ran over. Captain Gregory Hutchins further testified that the department lacked centralized responsibility for enforcing or updating safety protocols, and that responsibility for training was diffuse and ineffective.

76. No internal investigations, administrative reviews, or disciplinary actions were taken in response to these prior incidents. The absence of any remedial action demonstrates HCPD's deliberate indifference to a known and obvious risk.

77. At all relevant times, HCPD delegated safety enforcement and vehicle use protocols to individual officers or supervisors without centralized oversight, creating a policy of non-enforcement tantamount to an official policy or custom.

78. This longstanding custom of ignoring vehicular safety on beaches, combined with HCPD's failure to discipline or retrain officers after known violations, created a foreseeable and substantial risk of harm to beachgoers, including Sandra Schultz Peters.

79. HCPD's failure to train, supervise, or discipline its officers was the moving force behind Ms. Peters' death and deprived her of her clearly established rights under the Fourteenth Amendment to be free from state-created danger and conscience-shocking, deliberately indifferent conduct.

80. As a direct and proximate result of HCPD's unconstitutional policies, practices, and customs, Sandra Schultz Peters suffered death, and her estate has incurred damages recoverable under 42 U.S.C. § 1983.

### FOR A THIRD CAUSE OF ACTION
### SUPERVISORY LIABILITY UNDER § 1983
### (Against Captain Gregory Hutchins)

81. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated verbatim herein.

82. Captain Hutchins was responsible for the oversight of the Beach Patrol Division and had direct, personal knowledge of a pattern of prior incidents involving unsafe vehicular operations resulting in injuries to civilian beachgoers, including not less than two officer-involved incidents in which an Horry County Police Department Beach Patrol officer ran over and severely injured beachgoers.

83. Captain Hutchins had direct, personal involvement in the violation of Ms. Schultz Peters' constitutional rights by virtue of his operational control over the Beach Patrol Division.

84. Despite this knowledge, he failed to implement training, enforce safety protocols, or discipline officers involved in prior incidents.

85. Captain Hutchins failed to institute mandatory beach driving safety procedures after Officer Sullivan ran over and nearly killed a beachgoer, and Officer Brown came within seconds of killing Ms. Salley.

86. Captain Hutchins also failed to properly supervise the Beach Services officers as evidenced by the institutional decision not to report the near-miss incident involving Ms. Salley, which HCPD's designee has described as "a failure of the mid-level supervisor to report up the chain."

87. His above-pled actions and inactions constituted conscience-shocking deliberate indifference and were a proximate cause of Ms. Peters' death, including but not limited to:

    a. Failure to monitor the actions and inactions of Horry County Police Department Beach Patrol officers, including but not limited to Officer Brown, Defendant Muldoon, and other mid-level supervisors;

    b. Failure to ensure that Horry County Police Department Beach Patrol officers were following the non-mandatory "best practices" as instructed;

    c. Failure to ensure that Horry County Police Department Beach Patrol officers, when using motor vehicles on the beach, were outfitted with vehicles providing adequate visibility for operations on crowded public beaches;

    d. Failure to ensure that incidents in which Horry County Police Department Beach Patrol officers nearly struck objects or nearly killed beachgoers were properly investigated and reported up the chain of command; and

    e. In such other particulars as ongoing discovery may reveal.

### FOR A FOURTH CAUSE OF ACTION
### SUPERVISORY LIABILITY UNDER § 1983
### (Against Sergeant William Muldoon)

88. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated verbatim herein.

89. Sergeant Muldoon was actually aware of the 2024 incident involving Officer Brown's vehicle striking a beachgoer's chair.

90. He took no corrective action and permitted Officer Brown to remain on duty without modification of behavior or retraining. He did so because it was not a "big deal," according to his own sworn testimony.

91. His failure to intervene, supervise, and report demonstrates conscious-shocking deliberate indifference.

92. His supervisory actions and inactions proximately caused Ms. Peters' death because they allowed Officer Brown to continue his unchecked pattern of dangerous driving on public beaches crowded with beachgoers, considering:

    a. He had actual knowledge of Officer Brown nearly killing a seated beachgoer within months of killing Plaintiff;

    b. He chose not to discipline Officer Brown for nearly killing a seated beachgoer despite actual knowledge of the risk of harm Officer Brown's driving posed to the beachgoing public;

    c. He chose not to report the incident in which Officer Brown nearly killed a seated beachgoer because it was not "a big deal;"

    d. He chose not to require Officer Brown to undergo additional safety training after nearly killing a seated beachgoer because it was not "a big deal;" and

    e. He chose not to report Officer Brown crushing a beachgoer's chair moments after she left it, thereby causing property damage, to the Horry County Safety Council for a determination of whether the incident was "preventable," thereby subjecting

Officer Brown to the same measure of discipline as any other Horry County Employee would receive under the circumstances.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against all Defendants;

B. Award compensatory damages in an amount to be determined at trial;

C. Award punitive damages against the individual Defendants;

D. Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

E. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DERRICK LAW FIRM, PC**

s/ *W. Coleman Lawrimore*
W. Coleman Lawrimore, Fed. Bar #13069
Dirk J. Derrick, Fed. Bar #3931
901 N. Main Street
Conway, SC 29526
(843) 248-7486
cole.lawrimore@derricklawfirm.com
dirk.derrick@derricklawfirm.com
*ATTORNEYS FOR PLAINTIFF*